# J. P. H. JENKINS v. DAVID DAVIS.

APPEAL BY FOX, MOORE & CO. FROM THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

Argued February 2, 1891—Decided April 6, 1891.

[To be reported.]

(*a*) A debtor confessed a judgment to his attorney, as trustee for his creditors. The confession specified that the judgment was given to secure the debtor's several creditors, and that the moneys collected upon it were to be distributed by the trustee pro rata "among all my creditors, share and share alike: "

1. On distribution of the proceeds of a sale on the judgment, parol testimony was admissible to show that the intention of both the debtor and trustee was to secure only certain specified claims scheduled in writing at the time, and that by mistake certain words which would have so restricted the security were omitted from the confession.

2. The parties, for whose specific use the judgment was alleged to have been given, had a standing to show that such a mistake was in fact made, distinct from and independent of the judgment defendant; the acquiescence of the latter in the judgment as entered, whether silent or positive, could not conclude them.

Statement of Facts.

3. In such a case, when the fact of the mistake is established by clear, precise and indubitable evidence, and it does not appear that its correction would do any injury to those who may have supposed themselves entitled to participate in the security, equity will not permit the clear purpose of the parties to be defeated.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 388 January Term 1890, Sup. Ct.; court below, No. 12 June Term 1886, E. D., C. P.

On March 17, 1886, judgment was entered in the court below, in favor of J. P. Hale Jenkins, trustee, etc., upon the following instrument:

$1,500.00                                      March 17, 1886.

On demand, I promise to pay to J. P. Hale Jenkins, trustee for my creditors, or order, the sum of fifteen hundred dollars, without defalcation, for value received. And I hereby confess judgment in favor of said Jenkins, trustee, for the above named sum, hereby releasing all errors and declaring there shall be no stay of execution hereon. This judgment is given to said Jenkins to secure my several creditors. He is to make a pro rata distribution among all my creditors, share and share alike.

In witness whereof. . . . .

DAVID DAVIS (SEAL).

On the same day, an execution was issued upon the judgment. The sheriff, having sold certain personal property by virtue of the execution, realizing therefrom $1,251.48, paid over to the plaintiff the proceeds of sale, less costs.

On May 20, 1887, Mary G. Stacker obtained a rule for a citation against J. P. Hale Jenkins, trustee, to file an account. The rule was made absolute on February 20, 1888, and it was ordered that an account be filed on or before March 5, 1888. On March 1, 1888, Mr. Jenkins filed an account exhibiting a balance of $965.03, in his hands as trustee in the judgment. This account, upon the filing of proof of publication of notice, was confirmed nisi on June 4, 1888, and on June 6, 1888, *Mr. Walter S. Jennings* was appointed auditor, to make distribution of the balance in the hands of the accountant.

The auditor reported the facts shown by the testimony in substance as follows:

On or about March 15, 1886, David Davis went to the law office of J. P. Hale Jenkins, to consult him in reference to financial troubles, and, as Mr. Jenkins was absent, communicated his business to Mr. Frank L. Murphy, in charge of the office. By Mr. Murphy's advice, he returned the next day and saw Mr. Jenkins. From his statements to Mr. Murphy and Mr. Jenkins, it appeared that some of his creditors were pressing him for payment, though his assets exceeded his liabilities; that, about two months before, he had confessed a fraudulent judgment to his brother-in-law, George W. Eadline, and by means of a sheriff's sale thereunder had transferred to Eadline all his personal property, including a stock of goods in a country store at Merion Square; that the arrangement made was that Eadline should carry on the store for the benefit of Davis, until the latter's business creditors would become reconciled to the situation, when he was again to commence business; that Eadline had failed to send Davis money in accordance with the agreement between them, was about starting another store at West Manayunk, and had taken goods out of the store at Merion Square, worth $1,800, to stock the new store, and Davis desired to get the goods back.

Upon making these statements, Davis was advised to get a list of his creditors and confess a judgment to some one in trust for them, so that the goods might be levied on in the hands of Eadline. A list was prepared embracing all his "business creditors" except two, with the amounts of their claims aggregating a little less than $1,500. Davis said there were two other creditors whose claims amounted to less than $50, but whose names he had forgotten and would procure afterwards. Being asked if he had any other indebtedness, Davis said he owed his father, Joseph Davis, $300, but he would not want to come in on the judgment. He also mentioned a bond for $6,000, held by Mary G. Stacker, secured by a mortgage of real estate at Merion Square, and a mortgage for $3,500 upon nine acres of land he had recently purchased, held by other parties, but said that these two debts were not to be included in the judgment. Davis's intention and the understanding between him and Mr. Jenkins were that the judgment proposed to be given should be for the use and benefit of his "business creditors" only, and that the $300 due his father, and the

amounts of the two mortgages, should be excluded therefrom. Mr. Jenkins then drew up the instrument upon which the judgment for $1,500 was afterwards entered, intending to draw it so as to confine the benefits of it to the business creditors, but he prepared it hurriedly and by oversight omitted the word "business" therefrom. The omission was not discovered until in a later stage of the proceedings.

The names of the two business creditors originally omitted from the written list, were procured and added to it by Mr. Jenkins, together with the amounts of their respective claims, aggregating $40.50, within a week after the entry of the judgment. As thus completed, the list, in evidence as paper A, comprised sixteen creditors, with claims aggregating $1,515.90. It was prepared for the purpose of showing the persons for whom Mr. Jenkins was to hold the judgment, and the proportions of their interests therein, and had ever since been retained by him as supplemental to the judgment. Within a few days after the date of the judgment, Mr. Jenkins caused all the creditors named in the list to be notified that he was trustee for them thereunder.

The witnesses by whose testimony it was shown that the judgment confessed in favor of Mr. Jenkins, as trustee, was intended to secure only the business creditors, were Messrs. Jenkins and Murphy and Mr. J. A. Strassburger, the counsel of some of those creditors.

The bond and mortgage for $6,000 in favor of Mary G. Stacker, were dated June 16, 1885, payable three years after date, with interest at five per cent, payable semi-annually, and attorneys' commissions of three per cent, in case of collection by suit. The bond contained a warrant of attorney to confess judgment, and judgment was entered thereon on February 11, 1886. The question presented to the auditor was whether that judgment was entitled to participate in the distribution of the proceeds of the sheriff's sale under the trust judgment. Joseph Davis and the holders of the $3,500 mortgage made no claim against the fund, and a release of any such claim, signed by Joseph Davis, was filed with the auditor.

The auditor reported his conclusions upon the question presented for his determination as follows:

Auditor's Report.

In considering this judgment, there is nothing upon its face which would indicate that any mistake had been made, or any provision omitted that was intended to have been inserted. Its terms are clearly and forcibly expressed, and the language used is unambiguous, and clearly directs the trustee to make a pro rata distribution of the money realized among all his creditors; and in such cases the general rule of law is, "Where there is no ambiguity in an instrument of writing, parol evidence of the intention of the parties is not admissible: Litle v. Henderson, 2 Y. 295.

That parol evidence is admissible to correct a mistake, or to show that at the time Davis signed the judgment he would not have done it, had he known that by its terms Mrs. Stacker's judgment would be included, is well settled, even though it varies or materially alters the instrument: Greenawalt v. Kohne, 85 Pa. 369. The parol testimony of Davis would probably be admissible to correct any mistake, made either by himself or by his attorney at the time of the drawing of the judgment, providing that no injury was sustained or legal right waived by a reliance on the judgment. But, unfortunately, Mr. Davis is now insane and confined in an asylum, and we have not the benefit of his testimony, and he does not impeach the judgment or attack it in any way.

Is the testimony of Messrs. Jenkins, Murphy and Strassburger admissible to vary the written and clearly worded and unambiguous judgment? Mr. Jenkins is but a nominal party, a mere stakeholder, acting as counsel for Davis and trustee for all his creditors. The contract is not repudiated by Davis, and his creditors must claim under its terms or not at all. When the judgment was entered and execution issued thereon, Mr. Jenkins's position as counsel for Davis became secondary, or subservient to his duty as trustee for all the creditors of David Davis. Can his testimony, then, be received to abridge the rights of any of the persons who, according to the plainest terms of the judgment, are included in it? The auditor is of the opinion that it cannot be admitted; and for the same reasons, the testimony of Mr. Murphy and Mr. Strassburger for the same purpose is not received.

Nor does the auditor believe, even if Mr. Davis testified to the same facts relative to the parties to be included in the judg-

ment, and his testimony were believed as confidently as is Mr. Jenkins's, that it would be admissible to exclude Mrs. Stacker's judgment. The bond of Mrs. Stacker was entered in the Court of Common Pleas, February 11, 1886, more than one month prior to the entering of the trust judgment; interest was then due and unpaid upon it, and Mrs. Stacker had the right to rely upon its terms and forbear execution upon her judgment, unless she had timely notice from Davis that she was not included. There is no evidence that she had such notice till long after, when it was too late for her, if she desired, to test the validity of the other debts; and it is impossible to say what effect, if any, the entry of the confessed judgment had upon the course which otherwise Mrs. Stacker might have pursued.

It is admitted that the Stacker judgment has not been paid; and therefore, guided by the reasons given above, it is allowed a pro rata share in the distribution of the fund. . . . .

—The auditor attached to his report a schedule distributing the fund among the sixteen business creditors and Mary G. Stacker, the dividend being at the rate of eleven per cent. To this report, Fox, Moore & Co., and other creditors included in the list of those whom the trust judgment was intended to secure, filed exceptions specifying, inter alia, that the auditor erred:

1. In deciding that the testimony of Messrs. Jenkins, Murphy and Strassburger could not be received "to abridge the rights of any of the persons who, according to the plainest terms of the judgment, are included in it." [3]

4. In not excluding Mary G. Stacker from participating in the distribution. [4]

After argument of the exceptions, the court, WEAND, J., on March 3, 1890, filed the following opinion:

David Davis executed and delivered to Mr. Jenkins, as "trustee for my creditors," a judgment on which the fund for distribution was realized. It is now proposed to restrict payment to a certain class of creditors, designated as "business creditors," to the exclusion of a mortgage creditor who held a judgment bond accompanying her mortgage, which judgment was duly entered before the one in dispute.

Opinion of Court below.

The judgment is clear and precise in its terms, and requires no explanation upon the ground of ambiguity. It is claimed, however, that it was intended only to protect certain persons of whom Mrs. Stacker, the mortgage creditor, was not one, and the evidence to sustain this contention is found in the testimony of Mr. Jenkins, who was then attorney for Davis, of Mr. Strassburger, who represented a creditor, and Mr. Murphy, who was acting for Mr. Jenkins. Mr. Davis does not appear to dispute the distribution, he being now insane.

Whilst it is true that a written instrument, although unambiguous, may be explained or reformed for fraud, accident or mistake, or where it is being used against the expressed intent of the parties, we think the rule cannot be successfully invoked in this case. In the first place, Davis, the obligor, does not make the claim, nor does any one in his behalf. His creditors, in this respect, do not stand in his shoes. They were not parties to the contract, and were not aware of the judgment until after it had been entered. As soon as delivered, it enured to the benefit of all persons in whose behalf it was expressed to have been given. As there was no inducement held out by any creditor to Davis to confess the judgment, it may well be that he consented that it should be used as written, although he originally intended a different wording. It is presumed that he read and understood it before signing, and although its effect may be different from what he thought it would have as written, such belief in his mind would not alter the effect of the instrument. To hold otherwise would be to allow every obligor to construe a solemn instrument according to his construction, instead of that which the law places upon legal documents whose words are clearly and plainly written and the effect of which is defined by law. Mrs. Stacker, however, when she saw this judgment of record had the right to rely upon its terms as protecting her claim. She knew that she was a creditor, and after being lulled into security by the judgment, cannot now, after she is prevented from taking any action to secure herself on her judgment, be cut out of her share of the fund by an intention of the judgment debtor of which she had no knowledge until too late to protect herself had she so desired. The paper A offered in evidence, is only corroborating proof, but is no higher or stronger than would be the mere verbal

Arguments.

declaration of Davis made at the time he signed the judgment; and when one gives a judgment to all his creditors, it is not in the power of a certain class of creditors to claim it for themselves, although they show that the debtor expressed it to be for their benefit. It is unnecessary to decide what the effect would be were Davis himself making the defence.

And now, March 3, 1890, the exceptions are dismissed and the report confirmed.

—Thereupon, the exceptants took this appeal, assigning for error, inter alia:

3, 4. The dismissal of the exceptions filed.[3] [4]

*Mr. J. A. Strassburger*, for the appellants:

1. It is well settled that a debtor may confess a judgment to trustees, to secure bona fide creditors and thus prefer them; and that it may be shown for whom the payee is trustee by a paper filed afterwards or by parol: Breading v. Boggs, 20 Pa. 33; Guy v. McIlree, 26 Pa. 92; Ewing's App., 1 Chest. Co. R. 34. Davis had a legal right to confess this judgment for such of his bona fide creditors as he saw fit. Can the mistake of Mr. Jenkins, in drawing the confession, defeat his purpose or deprive the intended beneficiaries of their rights? It is competent to show the mistake by parol testimony: Hurst v. Kirkbride, 1 Binn. 610; Chalfant v. Williams, 35 Pa. 212; Kostenbader v. Peters, 80 Pa. 438; Greenawalt v. Kohne, 85 Pa. 369; Hoopes v. Beale, 90 Pa. 82; Phillips v. Meily, 106 Pa. 536; Walker v. France, 112 Pa. 203; Cullmans v. Lindsay, 114 Pa. 166; Wanner v. Landis, 137 Pa. 61. Confessions of judgment are open to inquiry by parol evidence for the correction of mistakes, the same as other instruments: Clement's App., 2 Penny. 313; Ayers's App., 28 Pa. 179.

2. Had Mrs. Stacker a right to rely on the terms of the judgment as protecting her, and did she lose anything? The fact that the trust judgment was for $1,500, while hers was for $6,000, ought to have been enough to put her on inquiry as to whether the language which seemingly included her judgment was not a mistake, and on inquiry she would at once have ascertained the facts. There is no evidence that she knew of this judgment until long after execution thereon, or that she was lulled into security and prevented from taking

action on her own judgment. She relies on constructive notice by the record. Moreover, the supposed injury to her by being lulled into security, is more imaginary than real. All she could have done, had she known the real state of the facts immediately after execution, would have been to issue execution on her judgment, levy on the same goods, and afterwards contest for the fund. She could have done the same thing by attaching the fund in the hands of the trustee.

*Mr. Montgomery Evans* (with him *Mr. Louis M. Childs*), for the appellee:

1. The primary purpose of Davis and his counsel was to recover certain goods which Davis fraudulently put into the possession of Eadline, and which the latter was appropriating to his own use. The use of the creditors, in the trust judgment, was a subterfuge of Davis to escape from the result of his own fraud. Being unable, by reason thereof, to maintain a suit for the goods himself, he was using the creditors to pull his chestnuts out of the fire. Had she not relied on the fact that the judgment was for the use of herself as well as the other creditors, Mrs. Stacker could have issued execution upon her judgment and contested the bona fides of the levy upon the goods in Davis's own possession, which, as clearly appears from the testimony of Mr. Jenkins, there was no present intention of selling under the execution.*

---

* While the fact was not found by the auditor and did not clearly appear, it might perhaps be inferred, from some expressions in the testimony referred to in the argument, that Davis had regained possession of the store after the removal therefrom of the goods taken by Eadline to West Manayunk. The testimony so referred to was as follows: "Davis represented to me that the goods taken by Eadline were worth $1,800; and the amount of his business debts not reaching that sum, and he being unable to maintain a replevin to regain those goods, I concluded he could pay his debts by the goods being sold in Eadline's possession, without disturbing the goods in the store; and I first directed the sheriff to sell the Eadline goods first, but make a levy on the whole of the goods. The sheriff reported that the Eadline goods would not realize $100. Consequently all his personal property was sold. An assignment was spoken of but advised against. Q. When you drew this judgment you considered Davis solvent? A. Yes. The first purpose of the judgment was to reach the goods in Eadline's possession, and to pay the business creditors. Q. Was the paying the business creditors the second consideration? A. Yes."

2. If the confession of judgment was read by Davis before signing it, he must have understood that it was for the benefit of all his creditors, and if he signed it without reading it he is bound by it: Greenfield's Est., 14 Pa. 489; Penna. R. Co. v. Shay, 82 Pa. 198; Adams v. Bachert, 83 Pa. 524; Pottsville Ins. Co. v. Fromm, 100 Pa. 347. But neither he nor any one representing him has ever questioned the judgment, or alleged that it is not as he intended it to be. The attempt here is to overthrow collaterally a judgment in our favor. There can be no distinction, in principle, between the case of a single judgment given to a number of creditors, and that of a separate judgment given to each creditor. If, in this case, separate judgments had been given to Mrs. Stacker and the other creditors, on what ground could the others have attacked her judgment? The plain answer of the decisions is that they could do so for collusion only: Meckley's App., 102 Pa. 536; Clark v. Douglass, 62 Pa. 408; Second N. Bank's App., 85 Pa. 528; Thompson's App., 57 Pa. 175; Dougherty's Est., 9 W. & S. 189; Sheetz v. Hanbest, 81 Pa. 100; Lennig's App., 93 Pa. 301.

OPINION, MR. JUSTICE CLARK:

It is conceded that on March 17, 1886, when David Davis executed the judgment bond of one thousand five hundred dollars to J. P. Hale Jenkins, trustee for his creditors, he was indebted to Joseph Davis, his father, in the sum of three hundred dollars; that there was a mortgage of six thousand dollars on the store property at Merion Square, and one of three thousand five hundred dollars on the nine acres; and that he had "business creditors" to the amount of about one thousand five hundred dollars. According to the terms of the obligation as written, Jenkins held it for the creditors generally; he was to make a pro rata distribution among all the creditors, share and share alike. But it appears from the findings of the auditor, and from the testimony, which is of the most precise, clear, and indubitable character, that this was not the intention of either of the parties to the obligation. The bond, it would seem, was drawn in the sum of fifteen hundred dollars, to cover certain claims which were scheduled in writing at the time of the execution of the bond, and which it was the purpose and

intention of the parties to secure. The testimony is wholly to this effect, and is of the clearest and most satisfactory character; indeed, there is no evidence to the contrary, apart from the words of the obligation itself.

It is contended, however, that as the words contain no ambiguity, but are plain and clear in their meaning, they must be read as they are, and be construed according to their obvious import, especially as Davis himself is silent and has done nothing to vary their effect. But, however plain the words, and obvious their meaning, if the bond was in fact given to secure certain creditors only, and there was a mistake made in the expression of the uses to which the proceeds were to be applied, that mistake, if it was mutual, may undoubtedly be corrected, if the correction does no injury to those who may have supposed themselves entitled to participate. Nor can it be doubted that the parties for whose special use the bond is alleged to have been given have meritorious standing in court to show that a mistake was in fact made. They are not mere volunteers. David Davis is insane. He is confined in a lunatic asylum, and is now, in respect of this case, as if he were dead. The claim of Fox, Moore & Co. is in their own right; it would not now be in the power of David Davis to gainsay that right if he were sane; their standing in court is distinct and independent of Davis, and it is a matter of no concern that he does not complain. He cannot now, either by his silent acquiescence or his acts, divert the fund from the persons entitled.

It appears from the report of the auditor that some time prior to this transaction David Davis had transferred his stock of merchandise, in fraud of creditors, to one George W. Eadline, who seemed disposed to take advantage of his position to apply the same to his own use, rather than for the benefit of Davis, as they had agreed. Davis thereupon employed Mr. Jenkins as his counsel. The auditor, in stating the facts which followed, in substance says: Mr. Jenkins advised him that if he had any bona fide creditors, he should compile a statement of them the next morning, and bring it to him. On March 17, 1886, pursuant to advice, Davis called with the statement marked A. The first twelve names of the creditors, and the amounts due to them, respectively, were written on the paper. The names of E. S. Reeves, Hague & Co., and Carey Bros. and

Gravesmyer, were added by Jenkins that morning, before the judgment was confessed; and Davis said there were two other creditors, whose claims amounted to less than fifty dollars, but he had forgotten their names. The names and amounts of these two claims were also obtained, and appended to the schedule, within the week. Davis, on being asked if he had any other indebtedness, said that he owed his father three hundred dollars, a mortgage of six thousand dollars, and one of three thousand five hundred dollars, but that these amounts were not to be included in the judgment, but were to be excluded. Mr. Jenkins said there would be no trouble about that, but he prepared the judgment hurriedly, intending to insert in it the words " business creditors ; " and he was surprised afterwards to find that the word " business " was omitted; that the judgment was in fact given to Jenkins as trustee to secure the payment of the claims of the creditors named in the paper A, and none other, and it was expressly so understood before the judgment was confessed; and that the paper was supplemental to the judgment, and was prepared for the purpose of ascertaining the persons and amounts for whom Mr. Jenkins was to hold the judgment.

The evidence to establish these facts is abundant, and equity will not permit the clear purpose of the parties to be defeated. It was perhaps negligent in the parties not to have read and considered the effect of the words they employed in the obligation, but as the position of Mary G. Stacker is not in any respect changed in consequence, we cannot see why the paper may not be read so as to conform to their actual intention. Davis had a right, by a judgment confessed in good faith, to prefer his unsecured creditors. The judgment note was given and the fieri facias issued on the same day. It does not appear that Mary B. Stacker was misled by the general expression of the judgment, or that there was anything she might have done which because of that she refrained from doing, or that she was prejudiced in the slightest degree by the fact that the judgment and execution seemed to be in part for her benefit. Indeed, it does not appear that she knew anything about it until after the sheriff's sale of the personal property, and until the question of distribution arose, when she presented her claim. Her judgment had been entered for a month or more

Syllabus.

prior to the Jenkins judgment. She might during that time have issued execution, but she did not do so. She could not have refrained from doing this because of the Jenkins judgment, for the judgment was entered and the writ issued on the same day, and it does not appear that she was aware that this had been done for some time afterwards.

We are of opinion that the testimony fully sustains the claims of the appellants, and that the claim of Mary G. Stacker should not participate in this fund.

> The decree of the Common Pleas is reversed at the cost of the appellees; and it is ordered that the record be remitted in order that distribution may be made in accordance with this opinion.

